IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL EUGENE LEAVERTON,                    Case No. 2:12-cv-01205-HU

        Petitioner,              FINDINGS AND RECOMMENDATION

   v.

MARK NOOTH, Superintendent,
Snake River Correctional
Institution,

        Respondent.


ANTHONY D. BORNSTEIN
Federal Public Defender's Office
101 S.W. Main Street, Suite 1700
Portland, Oregon 97204

    Attorney for Petitioner

ELLEN F. ROSENBLUM
Attorney General
SAMUEL A. KUBERNICK
Assistant Attorney General
Department of Justice
1162 Court Street N.E.
Salem, Oregon 97301-4096

    Attorneys for Respondent

HUBEL, Magistrate Judge



1 -- FINDINGS AND RECOMMENDATION

Petitioner, an inmate at Snake River Correctional Institution, brings this habeas corpus proceeding pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the petition should be DENIED, and this proceeding DISMISSED, with prejudice.

## BACKGROUND

On May 6, 2007, petitioner's step-daughter "CL" (age 17) told her mother that petitioner had been having sex with her for the past 3-4 years. CL's mother immediately reported the abuse to police. CL was taken to Meridian Park Hospital for a rape kit examination. The test disclosed that petitioner's DNA matched the sperm cell DNA on CL's vaginal swabs. Resp. Exh. 122 at 45. CL revealed to police and hospital staff that the abuse started with her dad fondling her when she was about 14 years old. CL stated that petitioner forced her to have intercourse about every other day, but lately it was more frequent. Police Detective Jeffrey Fitzpatrick summarized CL's description of the abuse as follows:

> It started as touching and she was told that it was a normal thing. She said that her dad (Michael Leaverton) told her that he had to examine her; otherwise he would have to take her to a doctor to have her examined. [CL] stated that she did not remember the first time, but thinks that the sex started when she was 14 years old. [CL] stated that it always happens the same way. Her dad will send the kids outside to play. If she says no, he tells her that it is going to happen anyway, so she just gets it over with. CL stated that her dad is usually nicer to her, her brother and her sister afterwards.

Resp. Exh. 121 at 7.

On May 6, 2007, petitioner was taken into custody at Newberg
Providence Hospital (after an apparent suicide attempt).
Petitioner subsequently was taken to the Sherwood Police Department
where he was interviewed by Detective Fitzpatrick as follows:

> Detective Fitzpatrick: So, why don't you tell me what
> happened today?
> **Michael Leaverton: She already told you what happened.
> Her version is the truth.**
>
>        \* \* \* \* \*
>
> Detective Fitzpatrick: Did you have sex with her today
> man?
> **Michael Leaverton: If she said that we had sex then we
> had sex.**
>
>        \* \* \* \* \*
>
> Detective Fitzpatrick: What's stupid?
> **Michael Leaverton: the whole frickin thing.  It's my
> fault, I did everything.  There I admitted everything.
> I did it all.  It's all on me...all on me.**
>
> Detective Fitzpatrick: What exactly did you do?
> **Michael Leaverton: Whatever she said I did, I did.  Okay.**
>
>        \* \* \* \* \*
>
> Detective Fitzpatrick: Is there a possibility [that your
> seminal fluid will be found inside of her]?
> **Michael Leaverton: Sure...We had sex. We did it so many
> times it's unbelievable.**
>
> Detective Fitzpatrick: How many times did you do
> it...Today?
> **Michael Leaverton: Hundred's...Hundreds, I don't know
> fucking know.**
>
> Detective Fitzpatrick: How many times today?
> **Michael Leaverton: How many times did she say we did it
> today?**

///

Detective Fitzpatrick: I'm asking you man.
**Michael Leaverton: Hey, whatever she said.  Like I said.
If she said we did it four times.  We did it four times.
If we did it once then we did it once.**

                     \* \* \*

Detective Fitzpatrick: So, is her vaginal fluid going to
be on [your] shorts?
**Michael Leaverton: Yeah.  Yep.  I did it.**

Detective Fitzpatrick: So how long has it been going on?
**Michael Leaverton: Oh....Fuck long time.**

Detective Fitzpatrick: How long is a long time?  You're
being a little facetious here.
**Michael Leaverton: However long she said it's been going
on.**

                     \* \* \*

Detective Fitzpatrick: So, how long have you and [CL]
been having sex?
**Michael Leaverton: Actually, not long at all.**

Detective Fitzpatrick: How long is that?
**Michael Leaverton: Close to 3 or 4 years I guess. \* \* \***

Resp. Exh. 122 at 24-28 (emphasis in original).

On May 11, 2007, petitioner was indicted on charges of Rape in
the First Degree (4 counts), Unlawful Sexual Penetration in the
First Degree (4 counts), Sexual Abuse in the First Degree (4
counts), Sexual Abuse in the Second Degree (2 counts).  Resp. Exh.
102.  On December 4, 2007, petitioner pled guilty to two counts of
Rape in the First Degree (counts 1 and 2), one count of Unlawful
Sexual Penetration in the First Degree (count 5), and one count of
Sexual Abuse in the First Degree (count 9).

Under the terms of the plea agreement, the sentencing would be open, with the State seeking a sentence of no more than 300 months, and petitioner requesting a minimum sentence of 100 months.  Resp. Exh. 103.  At sentencing, the court imposed a 300-month sentence as follows: two consecutive 100-month sentences for each count of rape; a consecutive 75-month sentence for sex abuse; and a 120-month sentence for unlawful penetration (of which 95 months would run concurrent to the above sentences and the remaining 25 months consecutive).  Resp. Exhs. 108 at 68-71 & 101 at 3-4.  All four convictions were for Measure 11 crimes.  Resp. Exh. 101 at  3-4.

Petitioner did not file a direct appeal.  However, petitioner sought state post-conviction relief alleging that trial counsel was ineffective in the following particulars:

1.    failing argue at sentencing that petitioner's conviction for Unlawful Sexual Penetration should be consecutive to his three other convictions;

2.    coercing petitioner into pleading guilty to Ballot Measure 11 claims despite the fact that petitioner maintained that any sexual activity with the victim occurred when she was over 16 years of age;

3.    failing to raise as a defense that petitioner suffered from a mental disease or defect and was not able to aid and assist his attorney;

4.    failing to properly investigate, get files, do an independent evaluation, or obtain experts regarding petitioner's mental health; and

5.    assuring petitioner that he would only serve 100 months.

See Resp. Exhs. 111, 112 & 129 at 15-16.

After conducting an evidentiary hearing, the post-conviction court denied relief on all claims in a judgment which included the following findings:

> [The] Court believes that attorney said he'd argue for 100 months and there was a good argument, but that he also said the cap was 300 months and there were no promises. No evidence that petitioner could not aid & assist (he does have a diagnosed mental illness but the defense expert said no GEI [guilty except for insanity]. Court agrees that petitioner had no good choices, but believes he knew what choices were and decided to enter plea.

Resp. Exh. 130.

Petitioner appealed to the Oregon Court of Appeals. Counsel raised a single assignment of error, alleging that trial counsel was ineffective for failing to object "to the structuring of the sentences as not consistent with the sentencing court's intent to allow programs and earned time during the last 25 months of petitioner's total prison time." Resp. Exh. 131. In petitioner's *pro se* supplemental brief, petitioner set forth additional assignments of error as follows:

> 1. The post-conviction court erred when it failed to enter its judgment pursuant to ORS 138.640.

> 2. Trial counsel was ineffective due to his failure to properly investigate petitioner's medical history.

> 3. Trial counsel was ineffective when he coerced petitioner into pleading guilty to counts 5 & 9 despite the fact that petitioner was not guilty of the necessary elements.

Resp. Exh. 132.

The Oregon Court of Appeals affirmed, without opinion, and the Oregon Supreme Court denied review. Leaverton v. Nooth, 247 Or. App. 353, 271 P.3d 154 (2011), rev. denied, 351 Or. 675 (2012).

### DISCUSSION

**I.    Procedural Default**.

Generally, a state prisoner must exhaust all available state court remedies either on direct appeal or through collateral proceedings before a federal court may consider granting habeas corpus relief. 28 U.S.C. § 2254(b)(1); Jackson v. Roe, 425 F.3d 654, 657-58 (9th Cir. 2005). A state prisoner satisfies the exhaustion requirement by fairly presenting his claim to the appropriate state courts at all appellate stages afforded under state law. Casey v. Moore, 386 F.3d 896, 915-16 (9th Cir. 2004); Baldwin v. Reese, 541 U.S. 27, 29 (2004).

When a state prisoner fails to exhaust his federal claims in state court, and the state court would now find the claims barred under applicable state rules, the federal claims are procedurally defaulted. Casey, 386 F.3d at 920; Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991). Habeas review of procedurally defaulted claims is barred unless the petitioner demonstrates cause for the procedural default and actual prejudice, or that the failure to consider the claims will result in a miscarriage of justice. Coleman, 501 U.S. at 750.

In the instant proceeding, petitioner failed to exhaust grounds for relief 4-13 by failing to raise the grounds either in the initial state post-conviction proceeding, or on appeal therefrom. Petitioner does not argue otherwise, and has failed to present any basis to excuse his procedural default. Accordingly, habeas relief is not warranted for these grounds.

**II.  The Merits.**

   **A.  Grounds for Relief 1-3 (ineffective Assistance of Counsel).**

Petitioner has exhausted three claims of ineffective assistance of counsel. However, petitioner expressly waives ground for relief one (failure to object to structuring of the sentences to allow programs and earned time during last 25 months of sentence). Pet.'s Brief in Support at 9. Accordingly, this court addresses ineffective assistance grounds for relief two and three only.

A claim of ineffective assistance of counsel requires petitioner to prove that (1) counsel's performance fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687-88 (1987); Bell v. Cone, 535 U.S. 685, 695 (2002). Failure to satisfy either prong of the Strickland

test obviates the need to consider the other. <u>Strickland</u>, 466 U.S. at 687.

In the guilty plea context, the prejudice component of <u>Srickland</u> "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985). Thus, in order to establish prejudice in this case, petitioner must show that there is a reasonable probability that, but for counsel's errors, petitioner would not have pleaded guilty and would have insisted on going to trial. <u>Hill</u>, 474 U.S. at 58-59; <u>Hibbler v. Benedetti</u>, 693 F.3d 1140, 1150 (9th Cir. 2012).

This court's inquiry under <u>Strickland</u> is highly deferential. This court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. <u>Hibbler</u>, 693 F.3d at 1149. The issue is not whether this court believes the state court's determination under <u>Strickland</u> was incorrect, but whether that determination was unreasonable, a substantially higher threshold. <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123-24 (2009); <u>Hibbler</u>, 693 F.3d at 1146 & 1150; 28 U.S.C. § 2254(d)(1) & (2).

1. **Failure to Investigate/Argue Inability to Aid and Assist and Defense of Mental Disease or Defect (Ground Three).**

Petitioner alleges that trial counsel was ineffective for failing to investigate and raise the issue of petitioner's

competence to aid and assist his attorney, and whether he suffered from a mental disease or defect. Petition at 6. In his supporting brief, petitioner argues that trial counsel "failed to provide his mental health expert *with the available and necessary documentary evidence* that would have ensured a reliable mental health examination" and failed to obtain proper medication for petitioner which would have stabilized his condition. Pet.'s Brief in Support at 12 (emphasis added).

Petitioner's claim that trial counsel was deficient for failing to move for a competency hearing, requires proof that there is a reasonable probability that petitioner would have been found incompetent to plead guilty. Hibbler, 693 F.3d at 1149-50; Deere v. Cullen, 718 F.3d 1124, 1126 & 1145 (9th Cir. 2013).[1] Similarly, petitioner's claim that trial counsel was deficient in failing to develop or raise a defense that petitioner suffered from a mental disease or defect requires a reasonable probability that the

---

[1] A defendant is "competent to plead guilty and stand trial if he had 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and 'a rational as well as factual understanding of the proceedings against him.'" Deere, 718 F.3d at 1144 (quoting Godinez v. Moran, 509 U.S. 389, 396-98 (1993)).

defense would have succeeded at trial.[2]  <u>Weaver v. Palmateer</u>, 455 F.3d 958, 970 (9th Cir. 2006).

At the state post-conviction proceeding, petitioner's trial counsel, Adam Dean, attested that he hired Drs. Jerry Larsen and Kirk Johnson to evaluate petitioner's mental health.  Resp. Exh. 121 at 1.  According to Dean, Dr. Larsen opined that petitioner was competent and could assist in his defense, and Dr. Johnson determined that petitioner had no viable Guilty Except for Insanity defense.  <u>Id.</u> at 2.

Dr. Larsen's written report confirms counsel's attestation.  Dr. Larsen diagnosed petitioner as suffering from Attention Deficit Hyperactivity Disorder (by history), Bi-Polar 2 Disorder, Depression, and Personality Disorder NOS.  Resp. Exh. 132, App. 3 at 5; <u>see also</u> Resp. Exh. 108 at 57.  Notwithstanding, Dr. Larsen opined that petitioner "understands the respective responsibilities of the judge, the jury and the district attorney and can clearly explain a plea bargain."  Resp. Exh. 132, App. 3 at 4.  Additionally, Dr. Larsen opined that petitioner "understands the nature of the charges against him and can aid and assist in his own

---

[2] Pursuant to O.R.S. 161.295, "[a] person is guilty except for insanity if, as a result of mental disease or defect at the time of engaging in criminal conduct, the person lacks substantial capacity either to appreciate the criminality of the conduct or to conform the conduct to the requirements of the law."  Mental disease or defect does not include "any abnormality constituting solely a personality disorder."

defense." Finally, Dr. Larsen stated that petitioner would be a good candidate for sex offender treatment, assuming he is stabilized on appropriate medications. Id., App. 3 at 6 & 7.

Petitioner was deposed, and testified at the state post-conviction proceeding in support of his claim of ineffective assistance of counsel. Petitioner testified that Dr. Larsen had failed to take into account that petitioner suffered from Post Traumatic Stress Disorder and was "bipolar manic." Resp. Exh. 129 TR at 44. Additionally, petitioner testified that he believed Dr. Larsen had opined that petitioner must be stabilized on medication *before* he made any legal decisions. Resp. Exh. 128 at 27; Exh. 129, TR at 43-45. However, when asked whether Dr. Larsen in fact rendered this opinion, petitioner responded "I don't really know what Dr. Larsen said. This says so many different things, I'm only going by what I – I can read. I'm very layman." Resp. Exh. 129, TR at 45.

Petitioner offered no additional evidence to support a finding that he was either unable to aid and assist in his defense, or that he suffers from a mental disease or defect such that he lacked the capacity to either appreciate the criminality of the conduct or to conform his conduct to the requirements of the law. Moreover, petitioner failed to identify any documentary evidence that trial counsel should have provided to the experts. Consequently, the post-conviction court concluded that, despite petitioner's

diagnosed mental illness, there was no evidence that petitioner could not aid and assist, and that according to the defense expert, there was no viable guilty except for insanity defense.

Petitioner presents no clear and convincing evidence to rebut the post-conviction court's findings of fact.  See 28 U.S.C. § 2254(e)(1); Deere, 718 F.3d at 1145-46. Further, petitioner's characterization of Dr. Larsen's opinion as *conditioning* petitioner's ability to aid and assist on stabilizing medication is based upon an erroneous reading of the expert report.  Dr. Larsen rendered two distinct opinions: (1) petitioner was able to aid and assist in his defense; and (2) petitioner would be a good candidate for sex offender treatment, assuming he is stabilized on appropriate medications.  Finally, there is no evidence in the state court record to support petitioner's assertion that trial counsel failed to provide available and necessary documentary evidence to Drs. Larsen and Johnson to ensure a reliable mental health examination.

Accordingly, petitioner has failed to demonstrate any basis for concluding that trial counsel's preparation of his experts was deficient, or that petitioner suffered any prejudice as a result. The post-conviction court's rejection of this ineffective assistance of counsel claim is neither contrary to, or an unreasonable application of clearly established law; nor is it

based upon an unreasonable finding of fact in light of the evidence presented.  See 28 U.S.C. § 2254(d)(1) & (2).

### 2.    Coercion to Enter Guilty Plea (Ground Two).

Petitioner alleges that trial counsel was ineffective as follows:

> [T]rial counsel coerced petitioner into pleading guilty to Ballot Measure 11 crimes despite being told that any sexual activity between petitioner and the victim occurred when she was sixteen. * * * As a result * * * petitioner is serving a total prison sentence of 300 months with 275 months as mandatory minimum Ballot Measure 11 prison time.

Petition at 6.

In his supporting brief, petitioner argues that the thrust of this claim is the same as discussed above, i.e., that "[w]ithout full mental stability, [petitioner] was especially susceptible to the pressure to plead guilty."  Pet.'s Brief in Support at 12.

A guilty plea is valid where "the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant."  Hill, 474 U.S. at 56.  "Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases."  Id. (internal quotations omitted). Additionally, petitioner must show that he was prejudiced by counsel's errors. Id. at 57-59; Lambert v. Blodgett, 393 F.3d 943, 979-80 (9th Cir. 2004).

14 -- FINDINGS AND RECOMMENDATION

The state court record reflects that petitioner's plea was voluntary and intelligent.  Petitioner pled guilty pursuant to a plea petition which provided that petitioner (1) understood he was pleading to Measure 11 crimes; (2) understood the minimum and maximum sentences for each crime; and (3) that he offered his guilty plea "FREELY AND VOLUNTARILY AND OF MY OWN ACCORD AND WITH FULL UNDERSTANDING OF ALL THE MATTERS SET FORTH IN THE ACCUSATORY INSTRUMENT AND IN THIS PETITION."  Resp. Exh. 103.

At the plea hearing, petitioner stated that he read and understood the plea petition, that he had not been threatened or coerced into entering a plea, that he understood the minimum and maximum sentences, and that although he was taking medication he had a clear understanding of where he was and what he was doing. Resp. Exh. 107 at 22-24.  At the sentencing hearing, petitioner stated that he pled guilty to avoid having to put CL on the stand. Resp. Exh. 108 at 67.

During the post-conviction proceeding, however, petitioner testified that his mental capacity was utilized to coerce him into pleading guilty.  Resp. Exh. 128 at 24.  He believed this was done because counsel did not have the time to investigate anything.  Id. Petitioner testified that he advised counsel that he was prepared only to plead guilty to having sex with CL *after* she was sixteen years of age, but not prior to that age:

I kept asking him how can I plea[d] guilty to things I
didn't do?  I don't have a problem pleading guilty to
what I did do, but I have a problem pleading guilty to
what I didn't do.  And he continued pressuring me,
forcing me down – pressuring me down that path.

* * * * *

When he started pressing me as hard as he did, he said I
had to make a decision right then and there, and that
there was no time to go anywhere else with this.  So I –
felt like he was forcing me into doing something I didn't
want to do.

Resp. Exh. 129, App. 3 at 40 & 42.

Trial counsel, however, attested that he did not coerce

petitioner into pleading guilty:

3.  Petitioner maintained that his sexual activity with
the victim occurred only after she turned 16 years old.
However, that position was at variance with the
statements of the victim, who reported that petitioner
had been having sex with her since she was about 14 years
old.  It was also at variance with petitioner's initial
statements to the police.

4.  Petitioner and I thoroughly discussed the State's
evidence and plea offer.  He understood the likelihood
that he would be convicted on the basis of that evidence,
and he chose to accept the plea offer.  I did not coerce
petitioner to plead guilty.

Resp. Exh. 121 at 1-2.

Based on the foregoing, the state post-conviction court found

that petitioner knew what his choices were, and decided to enter a

plea.  Petitioner has failed to rebut this factual finding with

clear and convincing evidence, and has failed to demonstrate that

this is an unreasonable finding of fact based upon the evidence

presented.  28 U.S.C. § 2254(d)(2) & (e)(1); Lambert, 393 F.3d at

16 -- FINDINGS AND RECOMMENDATION

982 & 984.  Moreover, the state record reflects that petitioner participated in a thorough plea colloquy, during which he represented that he understood the plea petition, he had not been coerced, and although he was taking medication he had a clear understanding of where he was and what he was doing. Representations made by a defendant during a plea hearing "carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977).

Accordingly, petitioner has failed to demonstrate that counsel's advice to enter a guilty plea to four counts of the indictment was not within the range of competence demanded of attorneys in criminal cases.  Moreover, petitioner has failed to demonstrate that there is a reasonable probability that, but for counsel's conduct, he would not have pled guilty and would have insisted on going to trial to face a total of 14 counts of Rape in the First Degree, Unlawful Sexual Penetration in the First Degree, and Sexual Abuse in the First Degree.  This is particularly true given the overwhelming evidence against him, including his incriminating statements to police, the rape examination kit revealing petitioner's DNA, and CL's statements to police and hospital officials that petitioner had sexually assaulted for approximately 3 to 4 years.  Cf. Lambert, 393 F.3d at 984 (prejudice analysis for ineffective assistance claim based upon failure to investigate includes consideration of weight of

17 -- FINDINGS AND RECOMMENDATION

evidence); <u>Miller v. Champion</u>, 262 F.3d 1066, 1068 & 1074-75 (10th Cir. 2001) (strength of prosecutor's case is often best evidence of whether petitioner would have insisted on going to trial).

In sum, the state post-conviction court's rejection of this ineffective assistance of counsel claim is not contrary to, or an unreasonable application of clearly established law, nor is it based upon an unreasonable determination of the facts. Accordingly, habeas relief is not warranted. 28 U.S.C. § 2254(d)(1) & (2).

Finally, as to both grounds for relief two and three, I reject petitioner's assertion that the state post-conviction court's factual findings are not entitled to deference because they are (1) "quite limited" and (2) the post-conviction court resolved "divergent accounts of critical events" based upon petitioner's oral testimony, the paper record, and defense counsel's *affidavit*. Pet.'s Brief at 13.

A state court need not conduct an evidentiary hearing to resolve every disputed factual question. "[S]uch a *per se* rule would be counter not only to the deference owed to state courts under AEDPA, but to Supreme Court precedent." <u>Hibbler</u>, 693 F.3d at 1147; <u>Lambert</u>, 393 F.3d at 966-68. Here, the state post-conviction court considered petitioner's testimony, counsel's sworn affidavit, and documentary evidence. Petitioner's counsel did not object to the admission of trial counsel's affidavit. Resp. Exh. 129, TR at

36-37. Petitioner's assertion that he was incompetent, suffered
from a mental disease or defect, and was coerced into pleading
guilty was refuted by the record.  The post-conviction court's
fact-finding procedure was reasonable and entitled to deference.
Hibbler, 693 F.3d at 1147-49; Sophanthavong v. Palmateer, 378 F.3d
859, 867 (9th Cir. 2004).

 **B.**   **Ground for Relief Fourteen**.

 Petitioner alleges that the post-conviction court violated
O.R.S. 138.640.[3] Petition at 12.  Assuming that this was in fact
a *state* procedural error, it does not warrant federal habeas
relief.  28 U.S.C. § 2254(a); Franzen v. Brinkman, 877 F.2d 26 (9th
Cir. 1989).

**CONCLUSION**

 Based on the foregoing, petitioner's petition for writ of
habeas corpus (#1) should be denied, and this proceeding dismissed
with prejudice.  Because petitioner has not made a substantial
showing of the denial of a constitutional right, a certificate of
appealability should be DENIED.  See 28 U.S.C. § 2253(c)(2).

 Additionally, petitioner's request for an evidentiary hearing
should be denied on the basis that the record refutes petitioner's

---

  [3] O.R.S. 138.640(1) requires the post-conviction court to
issue a judgment which clearly states the grounds on which the
cause was determined.

factual allegations, and petitioner fails to identify what evidence
would be presented in an evidentiary hearing.[4]

**SCHEDULING ORDER**

The Findings and Recommendation will be referred to a district
judge.  Objections, if any, are due December 9, 2013.  If no
objections are filed, then the Findings and Recommendation will go
under advisement on that date.

If objections are filed, then a response is due December 26,
2013.  When the response is due or filed, whichever date is
earlier, the Findings and Recommendation will go under advisement.

DATED this 20th day of November, 2013.

                                    /s/ Dennis J. Hubel

                                    _____
                                    Dennis J. Hubel
                                    United States Magistrate Judge

_____

[4] Petitioner's citation to <u>Martinez v. Ryan</u>, 132 S.Ct. 1309
(2012), in support of his request for an evidentiary hearing is
misplaced.  <u>Detrich v. Ryan</u>, 2013 WL 4712729 (9th Cir. Sept. 3,
2013) (Martinez does not apply to claims that were *not*
procedurally defaulted).